UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BARRISTER GLOBAL SERVICES NETWORK, INC.** | * * * | **CIVIL ACTION** |
| **VERSUS** | * * | **NO. 12-02759** |
| **ERIC SEIFERT,** *et al.* | * | **SECTION "L"(2)** |

### ORDER AND REASONS

The Court has pending before it a Motion to Dismiss submitted by Defendant, S&A Computer Services, Inc. ("S&A"). (Rec. Doc. 6). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

### I. BACKGROUND

This case arises out of an alleged breach of the Louisiana Unfair Trade Practices Act, LA. REV. STAT. ANN §51:1401 (2012), and Uniform Trade Secret Act, LA. REV. STAT. ANN. § 51:1431. Plaintiff Barrister Global Services Network, Inc. ("Barrister"), filed a Petition for Injunctive Relief and Damages against former employee, Defendant Eric Seifert ("Seifert") on December 9, 2011, in the 21st Judicial District Court of Louisiana. According to Barrister, Seifert was hired as Barrister's Manager of Development on November 15, 2010. Barrister alleges that shortly before Seifert began working for Barrister, he executed an Employee Confidentiality and Non-Compete Agreement in Hammond, Louisiana. (Rec. Doc. 1-1 at 10). On September 27, 2011, Seifert submitted a letter of resignation and was terminated thereafter. (Rec. Doc. 1-1 at 10). Barrister claims that Seifert "retained possession of property belonging to

1

Barrister," such as "laptop computers, company assets, company products, and data." (Rec. Doc. 1-1 at 10). According to Barrister, when Seifert returned the company laptop, data was missing from it. In its original petition, Barrister sought injunctive relief and asserted claims against Seifert for breach of his duty of loyalty, breach of contract, or in the alternative, unjust enrichment. (Rec. Doc. 1-1 at 4).

On September 20, 2012, Barrister moved to file a Supplemental Petition, adding Defendant S&A. Barrister alleges that subsequent to the first petition, it was discovered that upon termination Seifert immediately began working for Core ID Services, L.L.C. ("Core ID"), a subsidiary of S&A. Barrister claims that Core ID and S&A are strategic partners that engage in the same business and share an address. (Rec. Doc. 1-1 at 11). Barrister further alleges that since Seifert's termination, S&A "adopted the exact business protocol, methodologies, and clientele/customers as [Barrister]. As such it is believed that [S&A] elicited confidential information and trade secrets and proprietary information of [Barrister] from Defendant Seifert in an effort to obtain and [sic] unfair competitive advantage over [Barrister], while fully aware of the Confidentiality and Non Compete agreement between [Barrister] and Defendant Seifert." (Rec. Doc. 1-1 at 11). Among other things, Barrister claims that S&A stole "client/customer lists, business methodologies, training manuals, billing strategy, internal management software, and internal operational procedures...." (Rec. Doc. 1-1 at 11-12). In addition to the causes of action asserted against Seifert, Barrister asserts a cause of action against S&A for breach of the Louisiana Unfair Trade Practices Act and/or Uniform Trade Secrets Act. (Rec. Doc. 1-1 at 16). Barrister asks for damages as well as injunctive relief. (Rec. Doc. 1-1 at 6).

On November 14, 2012, S&A removed the case to this court pursuant to 28 U.S.C. §1332

and §1441. (Rec. Doc. 1). Barrister is a Delaware corporation with its principal place of business in Louisiana. (Rec. Docs. 1 at 3, 1-1 at 8). Seifert is a resident of Georgia. (Rec. Docs. 1 at 3, 1-1 at 9). S&A is a Georgia corporation with its principal place of business in Georgia. (Rec. Docs. 1 at 3, 1-1 at 9).

## II. PRESENT MOTIONS

Defendant S&A has filed the present Motion to Dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (Rec. Doc. 6). First, S&A argues that the jurisdictional allegations in Barrister's petitions are merely "conclusory" and, thus, are insufficient to meet its prima facie burden of proof to establish personal jurisdiction. (Rec. Doc. 6 at 4-5). Next, S&A claims that even if Barrister's allegations are sufficient, this Court does not have general personal jurisdiction over S&A because it lacks sufficient minimum contacts with Louisiana. (Rec. Doc. 6 at 6-14). With respect to specific jurisdiction, S&A argues that Barrister's cause of action does not arise out of any contacts that S&A may have had with Louisiana. (Rec. Doc. 6 at 6). According to S&A, both it and Seifert are "Georgia residents" and Seifert never did work for S&A in Louisiana. Therefore, any alleged solicitation and utilization of information would have taken place in Georgia. (Rec. Doc. 6 at 7). With respect to general jurisdiction, S&A argues that its infrequent contact with Louisiana, to provide IT services to clients and customers, does not constitute the type of "continuous and systematic" contacts required to establish general personal jurisdiction. (Rec. Doc. 6 at 10). S&A further alleges that it has no office, no real property, no bank account, and no employees in Louisiana. (Rec. Doc. 6 at 12).

In opposition, Barrister argues that S&A has sufficient contacts with Louisiana to allow

this Court to exercise specific personal jurisdiction over it. (Rec. Doc. 8). In support of this assertion, Barrister claims that S&A "directed its [tortious] activities toward Louisiana." (Rec. Doc. 8 at 7). According to Barrister, "solicitation occurred in Louisiana, from a business that solely operates in Louisiana." (Rec. Doc. 8 at 11). Barrister claims that S&A was fully aware of the Confidentiality and Non-Compete Agreement between Barrister and Seifert. (Rec. Doc. 8 at 3). Furthermore, Barrister alleges that the brunt of the injury occurred in Louisiana. (Rec. Doc. 8 at 11). Barrister relies heavily on the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), and concludes that "the mere fact that the tortious act was committed in Louisiana establishes jurisdiction in Louisiana." (Rec. Doc. 8 at 11).

### III.   LAW AND ANALYSIS

#### A.   Jurisdiction

"The plaintiff bears the burden of establishing a district court's jurisdiction over a nonresident, but it need only make a prima facie case if the district court rules without an evidentiary hearing." *Johnson v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). When a district court rules on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing it must take "uncontroverted allegations in the plaintiff's complaint... as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985). However, the court is not required to "credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

"A federal district court has personal jurisdiction over a nonresident defendant to the same

extent as a state court in the state in which the district court is located." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242 (5th Cir. 2008). Louisiana's "long-arm statute authorizes the exercise of personal jurisdiction to the limits of due process." *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 365 (5th Cir. 2008)*; see also* La. Rev. Stat. Ann. § 13:3201(B). The exercise of personal jurisdiction over a nonresident defendant is consistent with due process when "(1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with that state, and (2) the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice." *Panda Brandywine Corp.*, 253 F.3d at 867 (quoting *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 215 (5th Cir. 2000)); *International Shoe co. v. Washington*, 326 U.S. 310, 316 (1945).

When a cause of action arises out of a defendant's contacts with the forum state, the relationship between the defendant, the forum and the litigation form the essential foundation for personal jurisdiction. *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). Courts often refer to this type of jurisdiction as "specific jurisdiction." *Helicopteros Nacionales des Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984). A single, substantial act that is directed to the forum state can support specific jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Conversely, when "the corporate operations within a state [are] so substantial and of such a nature as to justify suit against [a foreign defendant] on causes of action arising from dealings entirely distinct from those activities," jurisdiction over the defendant may be proper. *International Shoe*, 326 U.S. at 318. This type of jurisdiction is typically referred to as "general jurisdiction." *Helicopteros*, 466 U.S. at 414 n. 9. In order for general jurisdiction to exist, the

5

contacts must be extensive in quality and nature.  *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992).

"When a plaintiff makes a prima facie case that the defendant has 'minimum contacts' with the forum state, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would be unreasonable." *Luv N'Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006).  The defendant must "make a 'compelling case' that traditional notions of fair play and substantial justice would be violated by the exercise of jurisdiction." *Johnson*, 523 F.3d at 615 (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).  In evaluating the reasonableness of exercising jurisdiction, a court considers "(1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the shared interest of the several states." *Johnson*, 523 F.3d at 615.  However, "[i]t is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *Wien Air Alaska*, 195 F.3d at 215 (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1549 (Fed.Cir. 1995)).

*1.   Plaintiff's Prima Facie Burden*

S&A argues that Barrister's jurisdictional allegations are conclusory and, thus, insufficient to establish a prima facie case of personal jurisdiction.  In support of this, S&A relies heavily on *Panda Brandywine Corporation v. Potomac Electrical Power Company*.  In that case, the Fifth Circuit found that the plaintiff's allegations in its petition were "merely conclusory."  The "sole evidence" was a state court petition alleging on "information and belief that the Appellee knew Appellants [were] Texas residents and knew its actions would intentionally cause harm to Appellants in Texas."  253 F.3d at 869.  The Court explained that "[e]stablishing a prima facie

6

case still requires the plaintiff to show the nonresident defendant's purposeful availment of the benefits and protections of and minimum contacts with the forum state." *Id.* at 868 (citing *Burger King*, 471 U.S. at 474). "[T]he prima-facie-case requirement does not require the court to credit conclusory allegations." *Id.* at 869.

S&A claims that, like the plaintiff in *Panda Brandywine*, Barrister's petitions "contain nothing more than conclusory allegations concerning S&A's contacts with Louisiana. Rather than making specific allegations...Plaintiff merely alleges that S&A is a Georgia Corporation... and that jurisdiction is proper as to S&A via the Louisiana Long Arm Statute." (Rec. Doc. 6-1 at 5). However, the present case is distinguishable from *Panda Brandywine*. S&A has overlooked the additional allegations set forth in the petitions forming a theory of personal jurisdiction that this Court finds to be more than merely conclusory. In its petitions, Barrister alleges that Seifert resigned from Barrister and stole confidential information from the company's computer. Barrister alleges that Seifert went to work for Core ID after resigning and that Core ID and/or S&A elicited this confidential information from Seifert. (Rec. Doc. 1-1 at 11). Barrister further claims that S&A then adopted Barrister's exact business protocol and methodologies. "As such, it is believed that [S&A] elicited confidential information and trade secrets and proprietary information of [Barrister] from Defendant Seifert in an effort to obtain and [sic] unfair competitive advantage over [Barrister]...." (Rec. Doc 1-1 at 11). Whether or not these allegations are true, the Court finds that they are not conclusory. Barrister offered a very specific theory to support its jurisdictional allegations.

    2.   *Specific Personal Jurisdiction*

In considering S&A's second argument, this Court now turns to whether Barrister

7

satisfied its prima facie burden of proof in establishing specific personal jurisdiction over S&A. As the Fifth Circuit has explained, "an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 628 (5th Cir. 1999). This is often referred to as the "effects" test and was established by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). "[T]he effects test is not a substitute for a nonresident's minimum contacts." *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997). Instead, it should be used as part of the specific jurisdiction analysis.

In *Panda Brandywine*, the Fifth Circuit emphasized the limitations of the "effects" test. The Court explained that causing a foreseeable injury in the forum, alone, is not sufficient to confer specific jurisdiction. *See Panda Brandywine*, 253 F.3d at 869 ("Appellants' allegations, even if true, only relate to the foreseeability of causing injury in Texas, which is not a 'sufficient benchmark' for specific jurisdiction."); *see also Wien Air Alaska, Inc.*, 195 F.3d at 212 ("Foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum."). More contacts with the forum state are needed, such that the defendant should "reasonably anticipate being haled into court there." *Panda Brandywine*, 253 F.3d at 869 (quoting *Burger King*, 471 U.S. at 474 (1985)).

In *Kwik-Kopy Corporation v. Byers*, an unpublished Fifth Circuit decision, the Court shed some light on what form these additional contacts might take. 37 Fed.Appx. 90, at *6 (5th Cir. May 9, 2002). In that case, the plaintiff alleged that a non-resident corporation tortiously interfered with a franchise agreement between the plaintiff and a third party. It was undisputed

that any alleged interference by the defendant would have taken place in Colorado, where the defendant and the third party were located. The Court distinguished the facts in that case from the facts in *Panda Brandywine*:

> The instant case is factually different from *Panda Brandywine* in that the franchise agreement is governed by Texas law, the immediate effect of the alleged tortious interference will be felt in Texas, and the defendant knew the franchise agreement was governed by Texas law.... Furthermore, the harm caused by [defendant's] alleged tortious interference is specifically directed at [plaintiff], a Texas Corporation. If proven, the interference would effect trade secrets, customers, and ultimately revenue of [plaintiff] and any financial loss to [plaintiff] would obviously be incurred in Texas.

*Id.* Accordingly, the Court found that specific personal jurisdiction was proper.

Similarly, in the present case the Confidentiality and Non-Compete Agreement in question was executed in the forum state under the forum state's law. (Rec. Doc. 7-1 at 14-19). The harm that was caused by S&A's alleged eliciting of confidential information was directed at Barrister. Barrister alleges that S&A "elicited confidential information and trade secrets and proprietary information" in order to "obtain an unfair competitive advantage" over a Louisiana corporation. (Rec. Doc. 1-1 at 11). If proven, the disclosure of this confidential information would threaten Barrister's business and the harm would be incurred in Louisiana. Resolving these factual issues in favor of the Plaintiff establishes a prima facie case of specific jurisdiction.

    3.   *Fair Play and Substantial Justice*

The Court finds that the burden imposed on S&A does not "offend notions of fair play and substantial justice." *See International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945). In making this determination, a court should consider:

9

> the burden on the defendant, the interest of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.

*Asahi Metal Indust. Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 113 (1987) (quoting *World-Wide Volkswagen*, 444 U.S. at 286, 292 (1980)). Knowing that the Confidentiality Agreement was formed in Louisiana and governed by Louisiana law, S&A should have reasonably anticipated being haled into court in Louisiana. The burden imposed on S&A in defending itself in Louisiana is minimal, due in part to the proximity of Georgia and Louisiana. This state has a compelling interest in protecting its corporations and enforcing the Louisiana Unfair Trade Practices Act, LA. REV. STAT. ANN §51:1401, and Uniform Trade Secret Act, LA. REV. STAT. ANN. § 51:1431. Furthermore, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Id.* The Court does not find the burdens here so serious.

    4.   *General Personal Jurisdiction*

S&A claims that "Plaintiff has conceded that general jurisdiction is not appropriate in this case" by failing to respond to S&A's arguments regarding general jurisdiction. (Rec. Doc. 13 at 7). In light of the Court's finding regarding specific jurisdiction, the Court finds it unnecessary to address this contention.

## IV.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendant's motion to dismiss (Rec.

Doc. 6) is DENIED.

New Orleans, Louisiana, this 27th day of September, 2013.

_____
UNITED STATES DISTRICT JUDGE